IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Melissa Allyne Caines, | ) | Civil Action No.  8:14-cv-00388-JDA |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a final Order pursuant to Local Civil Rules 73.02(B)(1) and 83.VII.02, D.S.C.; 28 U.S.C. § 636(c); the parties' consent to disposition by a magistrate judge; and the Honorable Timothy M. Cain's October 16, 2014 Order of reference.  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1]  For the reasons set forth below, the decision of the Commissioner is affirmed.

**PROCEDURAL HISTORY**

In September 2008, Plaintiff protectively filed applications for DIB and SSI, alleging an onset of disability date of December 6, 2006.  [R. 144–55.]  The claims were denied

---

[1] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

initially and on reconsideration by the Social Security Administration ("the Administration"). [R. 39–47]. On February 4, 2010, Plaintiff requested a hearing before an administrative law judge ("ALJ") [R. 69–74], and on November 10, 2010, ALJ Thomas G. Henderson conducted a de novo hearing on Plaintiff's claims [R. 20–34]. The ALJ issued a decision on November 23, 2010, finding Plaintiff not disabled within the meaning of the Social Security Act ("the Act") from December 6, 2006, through the date of the decision. [R. 5–19.] Plaintiff filed an action for judicial review on September 19, 2011, and this Court remanded the decision to the Commissioner for further administrative action, specifically to address Plaintiff's impairments in combination. [R. 477– 97.]

The ALJ conducted a subsequent de novo hearing on Plaintiff's claims on September 26, 2013. [R. 457–63.] The ALJ issued a decision on October 16, 2013, finding Plaintiff not disabled within the meaning of the Act from December 6, 2006, through the date of the new decision. [R. 442–51.] At Step 1,[2] the ALJ found Plaintiff last met the insured status requirements of the Act on December 31, 2009, and had not engaged in substantial gainful activity since December 6, 2006, her alleged onset date. [R. 444, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: mild carpal tunnel syndrome and degenerative disc disease. [R. 444, Finding 3.] The ALJ also found Plaintiff had non-severe impairments of debilitating migraines, depression, and anxiety. [R. 444–45.] At Step 3, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 445, Finding 4.] The ALJ specifically

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

considered Plaintiff's degenerative disc disease under Listing 1.04; Plaintiff's carpal tunnel syndrome under Listing 1.02; and Plaintiff's combined impairments under Listings 1.00, 12.00, and 11.00.   [R. 445–46.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: sit, stand, and walk each for 6 hours of an 8-hour day; frequently lift/carry 10 pounds; occasionally lift 20 pounds; occasionally balance, stoop, kneel and crouch; never climb, crawl, reach overhead; and occasionally perform fine fingering. She would be limited to simple, repetitive tasks.

[R. 446, Finding 5.]  Based on this RFC finding, the ALJ determined at Step 4 that Plaintiff could not perform her past relevant work as a plumber or a pizza delivery manager.  [R. 449, Finding 6]; but based on her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform [R. 449, Finding 10].  On this basis, the ALJ found Plaintiff was not under a disability, as defined in the Act, at any time from December 6, 2006, through the date of the new decision.  [R. 450, Finding 11.]  Accordingly, the ALJ found Plaintiff was not entitled to DIB or SSI benefits under the Act based on her July 16, 2008, applications. [R. 450–51.]

Plaintiff filed this action for judicial review on February 13, 2014.   [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's assessment of Plaintiff's credibility and RFC and his weighing of the opinions of the physicians who examined Plaintiff are not supported by substantial evidence.  [Doc. 17 at 11.]

The Commissioner, on the other hand, contends the ALJ's RFC assessment and credibility findings are supported by substantial evidence and that the ALJ properly weighed the medical opinions of record.   [Doc. 22 at 13, 20.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also  Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of

4

fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Commissioner*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence

or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Commissioner*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985);*see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material

and that there is good cause for the failure to incorporate such
evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the
basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the
determination of disability at the time the application was first filed; (2) the evidence is
material to the extent that the Commissioner's decision might reasonably have been
different had the new evidence been before him; (3) there is good cause for the claimant's
failure to submit the evidence when the claim was before the Commissioner; and (4) the
claimant made at least a general showing of the nature of the new evidence to the reviewing
court.  *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g);
*Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28
(4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by
amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health
& Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the
parties must return to the court after remand to file modified findings of fact.  *Melkonyan*,
501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter
a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth
in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the
Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating
a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152,
2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107,
2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No.
2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health &
Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme
Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.
*See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply
the more stringent *Borders* inquiry.

F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.   20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v.*

8

*Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in

9

the abstract, having several hypothetical and isolated illnesses.  *Walker v. Bowen*, 889 F.2d

47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of

impairments on a disability claimant, "the [Commissioner] must consider the combined

effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must

make specific and well-articulated findings as to the effect of a combination of impairments

when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule,

the ALJ must adequately explain his or her evaluation of the combined effects of the

impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined

impact of the impairments shall be considered throughout the disability determination

process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

**C.      *Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals

the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration

requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant

disabled without considering the claimant's age, education, and work experience.[4]  20

C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

**D.      *Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the

statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d

---

[4]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[5] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids"). Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[6] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations). When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the

---

[5]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[6]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a). A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

Commissioner must use a vocational expert to establish the claimant's ability to perform other work. 20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

12

### III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because

"it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986). Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. 20 C.F.R. §§ 404.1527(d), 416.927(d). However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. *Id.*

## IV.     Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986). The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability. 20 C.F.R. §§ 404.1517, 416.917. Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. *Id.*

## V.     Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing

the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis. *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion). First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528, 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit

15

a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990).  SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p.  *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996).  SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."  *Id.* at 34,485;

*see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).  Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**RFC Analysis**

Plaintiff argues that the "two central issues in an ALJ's RFC analysis are his assessment of the claimant's credibility and the weight he gives to the opinions of the physicians who have examined the claimant or the record."  [Doc. 17 at 11.]  Regarding credibility, Plaintiff argues that the ALJ played doctor "when he applied his own notions about what treatment would be appropriate for conditions that were truly disabling" and made unqualified medical assessments when he found that there were no "significant

17

clinical and laboratory abnormalities one would expect if the claimant were disabled." [*Id.* at 13.] Plaintiff also argues that it was improper for the ALJ to surmise from conservative treatment that Plaintiff's conditions were not disabling when the reason for inconsistent treatment is a lack of funding. [*Id*.] Plaintiff further contends the ALJ improperly gave significant weight to the assessment of Dr. Douglas E. McGill ("Dr. McGill") who saw Plaintiff briefly and had no records to review. [*Id.* at 15.] Plaintiff asserts that the most important evidence of record (the MRIs and the nerve conditions studies) were generated after Dr. McGill's examination and appear to directly contradict his assertion that no musculoskeletal or neurological evidence supports Plaintiff's complaints. [*Id*.] Consequently, Plaintiff argues that the "ALJ's handling of [Plaintiff's] credibility, his account of her daily activities, and his overemphasis on Dr. McGill's statement were all improper[, and, as] such, the ALJ failed to adduce substantial evidence to support his RFC assessment." [*Id.* at 16.] The Commissioner contends that the ALJ's RFC assessment and credibility findings are supported by substantial evidence and that the ALJ properly weighed the medical opinions of record. [Doc. 22 at 13, 20.]

The Administration has provided a definition of RFC and explained what a RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A

18

> "regular and continuing basis" means 8 hours a day, for 5 days
> a week, or an equivalent work schedule . . . .

SSR 96-8p, 61 Fed. Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and footnotes omitted). The RFC assessment must first identify the claimant's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. *See id.* Only after this identification and assessment may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. *Id.*

> Additionally, the Administration has determined that in assessing RFC, the ALJ

> > must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that [a claimant] has limitations or restrictions beyond those caused by his or her medical impairment(s) including any related symptoms, such as pain, due to factors such as age or height, or whether the [claimant] had ever engaged in certain activities in his or her past relevant work (e.g., lifting heavy weights.) Age and body habitus (i.e., natural body build, physique, constitution, size, and weight, insofar as they are unrelated to the [claimant]'s medically determinable impairment(s) and related symptoms) are not factors in assessing RFC . . . .

*Id.* at 34,476.

To assess a claimant's RFC, the ALJ must consider all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements. *Id.* at 34,477. SSR 96-8p specifically states, "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* at 34,478.

19

With respect to the opinion of a treating source, SSR 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996).  However, the ALJ need not give special significance to the opinion of a treating physician on an issue reserved to the Commissioner:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance.

SSR 96-5p, 61 Fed. Reg. 34,471–01, at 34,474 (July 2, 1996); *see* 20 C.F.R. §§ 404.1527(d) and 416.927(d).

The ALJ must also assess Plaintiff's credibility.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The

20

determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. *See* SSR 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." ).

### *Plaintiff's Credibility*

Under *Craig v. Chater*, 76 F.3d 585, 591–96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. *See also* 20 C.F.R. § 404.1529(b); SSR 96-7p, 61 Fed. Reg. 34483–01, 34484–85.

As stated above, the ALJ may choose to reject a claimant's testimony regarding her pain or physical condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). Additionally, a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with

the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]"  *Craig*, 76 F.3d at 595.  "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life."  *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (citation omitted); *see also Johnson v. Apfel*, 240 F.3d 1145, 1148–49 (8th Cir. 2001) ("Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility."); *see Johnson v. Barnhart*, 434 F.3d 650, 654, 658 (4th Cir. 2005) (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

*ALJ's Determination Regarding Credibility and Activities of Daily Life*

The ALJ indicated that, in considering Plaintiff's symptoms, he followed the two-step process outlined in *Craig v. Chater*.  [R. 446.]   At Step 1, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  [R. 447.]  The ALJ explained the basis for this Step 1 finding as follows:

> At the initial hearing, the claimant testified that she has not worked since 2006. During the day, she wakes up, takes her medication, and lies back down. Sometimes she is unable to get up to make food. She has been told surgery will not help her. She cannot work due to pain in her knees, hips, low back, right arm, neck, and shoulders.  She has occasional migraines. She wakes up every 30 minutes. Her pain medications cause her to sleep. She has a debilitating migraine once a month. She can turn her head halfway. She cannot lift her right arm. She could not pick up a coffee cup today. She cannot grip with her right hand. She has pain with bending, sitting, and walking. She has had scoliosis since birth. She is able to go to the store to get milk and eggs. She is productive about 3 hours of the day. The rest of the day, she lies down to decrease her pain. On a

> good day, she can change the cat litter. Dr. Egleston prescribed medications for depression.
>
> At the most recent hearing, the claimant testified that her condition has worsened over the past three years. She has arthritis in her knees and fingers. Her fingers lock and curl. Her depression has worsened. She takes antidepressants and pain medications which are prescribed by her family doctor. Her mother takes care of her. She has rented out a couple of rooms in her home to pay for her medical care.

[*Id.*]

At Step 2, however, the ALJ determined that Plaintiff's statements concerning the

intensity, persistence, and limiting effects of these symptoms were not entirely credible. [*Id*.]

The ALJ explained the basis for his Step 2 conclusion as follows:

> In terms of the claimant's alleged impairments, there is no indication that the claimant has required emergency treatment or inpatient hospitalization for these conditions. The record documents that the claimant's treatment has mostly consisted of the prescription of pain medications from Dr. David Egleston, her primary care provider (Exhibits 7F and I2F). The record also documents that she received epidural injections and chiropractic care for her back pain. However, she has not sought additional treatment for pain including physical therapy, biofeedback, surgery, or treatment from a pain clinic. While the claimant has been assessed with carpal tunnel syndrome, Dr. John Ernst, a treating orthopedist, found this to be mild and did not recommend surgery. Overall, this conservative course of treatment is inconsistent with a level of severity that would preclude the claimant from sustaining any work activity.
>
> The doctors' own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were disabled. X-rays of the cervical spine in December 2006 were negative (Exhibit IF). Dr. Egleston noted in February 2007 that the claimant had normal range of motion of the neck with intact sensation (Exhibit 7F). Although the claimant complained of neck and shoulder pain in February 2008, examination revealed good range of motion of the left arm (Exhibit 7F). In June 2008, examination revealed normal gait and extremities with no clubbing, cyanosis, or edema

23

(Exhibit 7F). In February 2009, Dr. Douglas McGill, a consultative examiner, reported that examination revealed intact musculoskeletal and sensory examinations. The claimant was able to take her shoes on and off. Gait and balance were intact (Exhibit 6F). Examination in April 2009 revealed intact neurological and musculoskeletal examinations (Exhibit 7F). An MRI of the cervical spine in June 2009 revealed osteophytes at CS-6 and spondylosis at C3-4 and C4-S. However, there was no stenosis and only minimal encroachment on the left at C3-4 and C4-S. An MRI of the lumbar spine revealed degenerative disc disease and an annular tear at LS-S 1. An MRI of the thoracic spine was negative (Exhibit 7F). When the claimant presented to Dr. John Ernst, an orthopedist, in January 2010 for evaluation of right hand and wrist pain, examination revealed full range of motion of the elbow and wrist. A subsequent nerve conduction study revealed right medial neuropathy consistent with carpal tunnel syndrome. Examination later in January 2010 revealed full range of motion of the elbow, wrist and finger, although hypersensitivity and diffuse Tinel's signs were noted. The claimant was assessed with dorsal sensory nerve hypersensitivity and mild right carpal tunnel syndrome. An ulnar nerve conduction study in January 2010 was normal (Exhibit 10F).

The claimant's complaints of constant, unremitting pain do not follow any physiological pain patterns. There are no overt abnormalities documented in the record. Specifically, Dr. McGill noted in February 2009 that his examination failed to reveal any neurological or musculoskeletal abnormalities such as joint swelling, atrophy, weakness, or numbness (Exhibit 6F). In fact, in spite of her complaints of right hand and wrist pain, Dr. Ernst noted that the claimant had full range of motion (Exhibit 10F).

The claimant has described activities, including caring for her personal hygiene, dressing herself preparing simple meals, doing laundry, visiting with friends, caring for her pets, and shopping, which are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations (Exhibits 6E, 8E, and 6F).

[R. 447–48.]

*Analysis*

Plaintiff challenges the ALJ's findings by accusing the ALJ of playing doctor when he "applied his own notions about what treatment would be appropriate for conditions that were truly disabling," and noted that there were no "significant clinical and laboratory abnormalities one would expect if the claimant were disabled[.]" [Doc. 17 at 13.] Plaintiff argues the ALJ's findings are improper particularly in light of the fact that Plaintiff's "conditions were managed with strong medication over a long period of time, indicating that her physicians accepted her complaints as valid." [*Id*.] Plaintiff also accuses the ALJ of "looking for objective evidence of the pain itself, having already determined that objective evidence supports a finding that there are conditions capable of causing such pain" based on his finding that the February 2009 exam failed to reveal any "neurological or musculoskeletal abnormalities such as joint swelling, atrophy, weakness or numbness." [*Id.* at 14.]

It is certainly true that "[a]n ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so," *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); however, the weighing of various evidence is precisely the typical province of the ALJ, *see* 20 C.F.R. §§ 404.527(d)(2) and 416.927(d)(2). If such a comparison was considered playing doctor, as proposed by Plaintiff, then the whole of the administrative review would be an illegality.

The ALJ's responsibility is to "make credibility determinations—and therefore sometimes must make negative determinations—about allegations of pain or other nonexertional disabilities." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (citation

omitted).  The Commissioner has recognized that there are potentially disabling conditions, such as chronic pain, in which there may be little objective medical evidence to support the claimant's assertion of disability.  Under such circumstances, the Commissioner is obligated to assess the credibility of the claimant and to look for other types of evidence in the record to evaluate the degree of impairment actually experienced by the claimant.  SSR 96-7p, 1996 WL 374186 (July 2, 1996).  One area of appropriate inquiry by the ALJ when assessing the credibility of a claimant's complaints of chronic pain is the medical treatment history of the claimant, which is based on the premise that if the medical condition was as disabling as asserted one would expect him or her to seek and receive extensive medical treatment.  [*Id*.]  This precisely what the ALJ did.

Upon review of the decision, the Court does not find that the ALJ "played doctor" by interpreting medical evidence or raw data in a medical record or by independently reviewing and interpreting the laboratory reports, or impermissibly substituting his own judgment for that of a physician.  The ALJ expressly considered the entire record and noted that Plaintiff's treatment mostly consisted of prescription pain medications from her primary care provider and did not require any emergency treatment or inpatient hospitalization.  [R. 447.] Additionally, the ALJ noted that, while Plaintiff received epidural injections and chiropractic care for her back pain, she did not seek additional treatment for pain including physical therapy, biofeedback, surgery, or treatment from a pain clinic.  [*Id.*]  The ALJ concluded that "[o]verall, this conservative course of treatment is inconsistent with a level of severity that would preclude the claimant from sustaining any work activity." [*Id*.] The Court finds these considerations by the ALJ to be consistent with those allowed by the regulations.  The ALJ did not interpret medical data or substitute his opinion for that of a treating physician.  He

26

clearly explained his consideration of Plaintiff's medical treatment history and found it inconsistent with her allegations of complete disability.

Plaintiff contends the ALJ failed to consider her inability to pay for additional treatment.  Social Security Rules make it abundantly clear that before an ALJ can draw any inference from a claimant's lack of medical treatment, the adjudicator must consider whether there is some alternative explanation for the absence of a significant treatment history, most notably whether the claimant may be unable to afford treatment or may not have access to free or low-cost medical services.  *See Preston v. Heckler,* 769 F.2d 988, 990–91 (4th Cir. 1985); SSR 96-7p, 61 Fed. Reg. at 34,487.  A review of the record, indicates that, with regard to back pain, the ALJ considered Plaintiff did have the ability to seek treatment from a primary care provider and an orthopedist, but she had not sought treatment from a physical therapist, a surgeon, or a pain clinic.  However,, Plaintiff points to no evidence in the record that Plaintiff did not seek a specific treatment due to an inability to pay.  Thus, the Court finds Plaintiff's argument is without merit.

Plaintiff also argues that the ALJ improperly relied on the absence of objective evidence in finding her not entirely credible.  The Court does not follow Plaintiff's characterization of the ALJ's opinion.  Here, the absence of objective evidence was only one of the factors properly considered by the ALJ.  *See* 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.");

*id*. §§ 404.1529(c)(4) and 416.929(c)(4) (noting that the ALJ must consider whether there are conflicts between a claimant's statements and the signs and laboratory findings).  The ALJ clearly and adequately discussed the medical evidence of record and his conclusions regarding the implication of the evidence.  The Plaintiff's argument here lacks merit.

Plaintiff also argues the ALJ, in assessing Plaintiff's activities of daily living, ignored any indication in the reports he cited that Plaintiff had difficulty performing these tasks at times and had to perform them at a slower pace and with breaks due to her conditions. [Doc. 17 at 16.]  Plaintiff contends the ALJ must assess a claimant's activity level overall, and not merely pick out the highest moments of functioning.  [*Id.*]  The ALJ, however, considered Plaintiff's alleged limitations.  The ALJ noted that Plaintiff described activities, including caring for her personal hygiene, dressing herself, preparing simple meals, doing laundry, visiting friends, caring for pets, and shopping, which are not limited to the extent one would expect given Plaintiff's complaints of disabling symptoms and limitations. [*Id.*]

The law is clear that a claimant's allegations regarding her pain need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment.  *Craig*, 76 F.3d at 595.  The ALJ assessed the evidence of record directed to Plaintiff's pain complaints and determined that Plaintiff's alleged problems with bending, sitting, lifting ,and walking were not fully consistent with the record.  [R. 449.]  The ALJ, nevertheless, accorded Plaintiff the benefit of the doubt in the RFC determination by limiting the amount she could sit, stand, walk, lift, carry, balance, stoop, kneel, crouch, climb, crawl, reach overhead, and perform fine fingering.  [*Id.*]  The ALJ noted that Plaintiff's medical evidence did not corroborate her claims that her medications caused drowsiness; however, the ALJ gave Plaintiff the benefit of the doubt

28

and limited her to simple, repetitive tasks.  [*Id*.]  Additionally, the ALJ limited Plaintiff to occasional fine fingering to accommodate her mild right median neuropathy; restricted her from overhead reaching and limited the amount she can lift/carry based on her complaints of neck pain; and limited her to light work in light of her mild lumbar degenerative disc disease.  [*Id*.]  Upon review, the Court finds the ALJ properly considered and adequately explained his consideration of Plaintiff's activities of daily living in accessing her credible limitations and substantial evidence supported the ALJ's decision.

### Dr. McGill's Medical Opinion

Plaintiff takes issue with the ALJ's decision to give "significant weight" to the assessment of Dr. McGill who examined Plaintiff only briefly, and found her complaints "follow nonphysiological pain patterns without over joint or musculoskeletal abnormalities." [Doc. 17 at 15.]  Plaintiff contends Dr. McGill's assessment is not reliable because he had no records to review, including the MRIs and nerve conduction studies, and that it was not entitled to significant weight in light of contradictory objective evidence.  [*Id.*]  Plaintiff claims the ALJ interpreted Dr. McGill's finding as supportive of the ALJ's conclusion that there was not objective evidence of Plaintiff's pain.  [*Id.*]

The ALJ is obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  *Johnson v. Barnhart*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527); *see also* 20 C.F.R. § 416.927.  ALJs typically "accord 'greater weight to the

29

testimony of a treating physician' because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Id.* (quoting *Mastro*, 270 F.3d at 178). While the ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, *Craig*, 76 F.3d at 590, the ALJ must still weigh the medical opinion based on the factors listed in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

The opinion of a treating physician is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Additionally, SSR 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion:

> [A] finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

1996 WL 374188, at *4 (July 2, 1996). However, not every opinion offered by a treating source is entitled to deference:

> Medical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is "disabled" or "unable to work," or make similar statements of opinions. In addition, they sometimes offer opinions in other work-related terms; for example, about an individual's ability to do past relevant work or any other type of work. Because these are administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner. Such opinions on these issues must not

30

> be disregarded. However, even when offered by a treating
> source, they can never be entitled to controlling weight or given
> special significance.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1527(e),

416.927(e) (stating an ALJ does not have to "give any special significance to the source of

an opinion on issues reserved to the Commissioner," such as an opinion that the claimant

is disabled, the claimant's impairment or impairments meets or equals a listing, or the

claimant has a certain residual functional capacity).

### *Dr. McGill's Opinion*

Dr. McGill was a consultative examiner who performed a vocational rehabilitation

evaluation on Plaintiff in February 2009. Dr. McGill documented Plaintiff's recited medical

and occupational history and noted that he had no evidence to review. [R. 350.] Plaintiff

represented that her depression had improved, that she was able to help with some

housework, and that she was able to handle self-care activities including driving. [*Id*.] On

physical exam, Plaintiff showed intact motor strength in all muscle groups of the upper and

lower extremities, sensation intact to light touch, pain with palpation to the knees and with

reflex testing of the elbows and knees, balance intact static and dynamic, and normal gait.

[R. 350–51.] Dr. McGill's impression, based on his evaluation, was that Plaintiff expressed

complaints of chronic pain with multiple musculoskeletal symptoms and non-physiological

pain patterns, without overt joint or neuromusculoskeletal abnormalities noted on exam such

as swelling or atrophy or focal weakness or numbness. [R. 351.]

### *ALJ's Evaluation of Dr. McGill's Opinion*

The ALJ gave significant weight to Dr. McGill's assessment that Plaintiff's complaints

of pain follow non-physiological pain pattens without overt joint or neuromusculoskeletal

abnormalities noted on exam. [R. 448.] The ALJ found Dr. McGill's findings supported by findings of his own exam and other objective evidence of record. [*Id*.]

*Analysis*

Plaintiff challenges the weight assigned to Dr. McGill's opinion based on the fact that Dr. McGill had no other medical records to review, including MRIs and nerve conduction studies. Plaintiff, however, does not explain how results of Plaintiff's MRI or nerve conduction studies would invalidate Dr. McGill's findings on physical exam. Further, the Court finds Plaintiff's proposition, that the ALJ used Dr. McGill's findings to support his conclusion that there was no objective evidence of pain, is an inaccurate interpretation of the ALJ's decision. Contrary to Plaintiff's contention, the ALJ did not find Plaintiff was not suffering pain; he merely found that her pain was not disabling under the Act. Lastly, the ALJ explained his review of the medical evidence of record supporting his decision to which the Plaintiff had no objection. Thus, the Court finds the ALJ's weighing of Dr. McGill's opinion is supported by substantial evidence.

## CONCLUSION

Wherefore, based upon the foregoing, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

S/Jacquelyn D. Austin
United States Magistrate Judge

September 3, 2015
Greenville, South Carolina